05-10062

# United States Court of Appeals
## For the First Circuit

No. 07-1245

UNITED STATES OF AMERICA,

Appellant,

v.

JAMES STEWART, a/k/a JAMES STEWART, JR.,
a/k/a JAMES L. STEWART,

Defendant, Appellee.

No. 07-1250

05-10321

UNITED STATES OF AMERICA,

Appellant,

v.

NATHALIE SOTO, a/k/a NATA,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William C. Young, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cudahy,* Senior Circuit Judge,
and Lipez, Circuit Judge.

*Of the Seventh Circuit, sitting by designation.

---

Randall E. Kromm, Assistant U.S. Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellant.
Peter Charles Horstmann, with whom Partridge, Ankner & Horstmann was on brief, for appellee Stewart.
James H. Budreau for appellee Soto.

---

July 7, 2008

---

**LIPEZ, Circuit Judge.** In this consolidated appeal, the government challenges the district court's conclusion that requiring DNA collection from non-violent felons who are sentenced to probation violates the Fourth Amendment. In light of our decision in United States v. Weikert, 504 F.3d 1 (1st Cir. 2007), which was issued seven months after the district court's ruling, that conclusion cannot stand. Although the district court correctly concluded that a "totality of the circumstances" balancing test must be used to analyze the constitutionality of the DNA collection program, the court's application of that balancing test is inconsistent with our analysis in Weikert. Accordingly, we reverse.

I.

Appellee James Stewart was sentenced to three years of probation after pleading guilty to felony charges that he obtained more than $30,000 in disability benefits to which he was not entitled, in violation of 18 U.S.C. § 641. The district court imposed the standard terms of probation, including the requirement that Stewart cooperate with the collection of a DNA sample, as mandated by the DNA Analysis Backlog Elimination Act of 2000 (the "DNA Act"),[1] Pub. L. No. 106-546, 114 Stat. 2726 (2000), codified

---

[1] The statute requires individuals who have been convicted of "a qualifying federal offense" and who are incarcerated or on parole, probation, or supervised release to provide federal law enforcement authorities with "a tissue, fluid, or other bodily sample" for purposes of extracting their DNA. 42 U.S.C. §

<u>as amended in relevant part at</u> 18 U.S.C. § 3563 and 42 U.S.C. §§ 14132, 14135a, 14135e. Stewart moved to modify the conditions of his probation, arguing that the DNA Act requirement, as applied to him, constituted an unconstitutional warrantless and suspicionless search. The district court agreed and granted Stewart's motion.

Appellee Nathalie Soto was sentenced by the same district court judge to two years of probation after pleading guilty to charges of counterfeiting in violation of 18 U.S.C. § 473. At the sentencing hearing, which was held four days before the opinion in <u>Stewart</u> was issued, the court announced sua sponte that it would not require Soto to submit to DNA collection as a condition of her probation in order to "be consistent with [the court's] thinking on the matter . . . in other cases."

In its written decision in <u>Stewart</u>, the district court applied the totality of the circumstances balancing test set forth by the Supreme Court in <u>United States</u> v. <u>Knights</u>, 534 U.S. 112, 118-19 (2001), and <u>Samson</u> v. <u>California</u>, 547 U.S. 843, 848 (2006). Under this framework, "[w]hether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental

---

14135a(a)(1)-(2), (c)(1). The term "qualifying federal offense" includes, inter alia, any felony. 42 U.S.C. § 14135a(d). Courts are required to order compliance with the DNA Act "as an explicit condition of a sentence of probation." 18 U.S.C. § 3563(a).

interests.'" Samson, 547 U.S. at 848 (quoting Knights, 534 U.S. at 118-19).

The district court first considered three governmental interests that could support the DNA Act's requirements: 1) supervision of individuals on probation, 2) prevention of recidivism through deterrence, and 3) the development and maintenance of a DNA database to assist in the solving of past and prospective crimes. United States v. Stewart, 468 F. Supp. 2d 261, 269-70 (D. Mass. 2007). The court then discounted each of these interests, concluding that 1) the programmatic collection of DNA has little connection to the supervision of probationers, 2) the government's interest in deterring crime through the DNA program was speculative at best because Stewart's crimes were non-violent property crimes, and 3) the government's general interest in solving crimes should not be given "overmuch weight" in the analysis. Id. at 270-73.

On the other side of the balance, the court acknowledged that Stewart, as a probationer, had diminished expectations of privacy. However, the court found that those expectations were meaningfully greater than those of individuals who were sentenced to terms of imprisonment or supervised release. The court further found that the blood draw "implicate[d] the most grave privacy rights," id. at 277, and that the subsequent analysis of the resulting sample constituted an "extensive invasion of privacy

-4-

interests," id. at 278. In reaching this conclusion, the court declined to consider the statutory limitations on the use of the DNA information, noting that the use of information, once collected, often expands over time.[2] Id. at 279-80. Thus, the court concluded that the "governmental interest in collecting this information fail[ed] to override" Stewart's privacy interests and, hence, the DNA Act was unconstitutional as applied to Stewart.[3] Id. at 282.

Seven months later in United States v. Weikert, 504 F.3d at 18, we upheld against Fourth Amendment challenge the collection of DNA samples from individuals on supervised release. In doing so, we recognized the validity of the governmental interests that were discounted by the district court in Stewart. More specifically, we concluded that the government has "important interests in monitoring and rehabilitating supervised releasees, solving crimes, and exonerating innocent individuals" through use of the CODIS database. Id. at 14.

---

[2] The DNA Act provides that "[a] person who knowingly discloses a sample or result . . . in any manner to any person not authorized to receive it, or obtains or uses, without authorization, such sample or result" is subject to a fine of up to $250,000 or one year in prison. 42 U.S.C. § 14135e(c); see Weikert, 504 F.3d at 13 (holding that the statutory penalty for misuse mitigates the risk that abuse will occur).

[3] The district court did not issue a separate written opinion with regard to Soto. It relied instead on the statement from the bench that compliance with the DNA Act would not be required.

On the other side of the balance, we found that "individuals on conditional release have a substantially diminished expectation of privacy," and that, contrary to the district court's conclusions in <u>Stewart</u>, the blood draw required for the collection of DNA samples is "neither a significant nor an unusual intrusion." <u>Id.</u> at 11-12. We also concluded that the risk of misuse of the DNA information stored in CODIS did not "significantly increase" the conditional releasee's privacy interest because the DNA Act includes significant criminal penalties for such abuse and because the "junk DNA" that is collected currently poses little risk of abuse. <u>Id.</u> at 12-13. Thus, we concluded that:

> [T]he government's important interests in monitoring and rehabilitating supervised releasees, solving crimes, and exonerating innocent individuals outweigh Weikert's privacy interests, given his status as a supervised releasee, the relatively minimal inconvenience occasioned by a blood draw, and the coding of genetic information that, by statute, may be used only for purposes of identification.

<u>Id.</u> at 14.

Stewart and Soto seek to distinguish themselves from the defendant in <u>Weikert</u> in two ways and urge us, in light of these differences, to engage in a new balancing. First, they emphasize the particular nature of the crimes for which they were sentenced. They argue that because their crimes were non-violent, property-related crimes, the collection of DNA would not serve as a deterrent to recidivism as applied to them. This argument rests on

-6-

the flawed assumption that DNA evidence is only useful for solving - and thereby for deterring - violent crimes. See Banks v. United States, 490 F.3d 1178, 1189-90 (10th Cir. 2007) (noting that "DNA can be extracted from hair, saliva, and numerous other parts of our bodies that even a non-violent criminal could leave behind on a piece of inculpatory evidence"). Moreover, attention to the nature of an individual conditional releasee's crime would detract from what we considered, in Weikert, to be a virtue of the DNA Act: that it applies uniformly to all felons and therefore "the importance of the government's interests is not diluted by the possibility of selective enforcement or harassment." 504 F.3d at 14.

Second, Stewart and Soto note that they have been sentenced only to probation, whereas the defendant in Weikert was on supervised release.[4] They claim that probationers have a greater expectation of privacy than supervised releasees, who have already served a term of imprisonment for their offenses. This argument is foreclosed by our analysis in Weikert, where we noted that "[p]robation, supervised release, and parole are all different forms of conditional release," id. at 7 n.4, and stated that

---

[4] As we explained in Weikert, "[p]robation is an alternative sanction to imprisonment in which a court permits a convicted offender to serve his or her sentence in the community subject to certain conditions and supervision by a probation officer." 504 F.3d at 7 n.4. (citing 18 U.S.C. §§ 3561, 3563). Supervised release, on the other hand, "is a period of community supervision imposed by the court to be completed after release from a jail or prison sentence." Id. (citing 18 U.S.C. § 3583(a)).

-7-

"courts generally have not distinguished among conditional releasees for Fourth Amendment purposes," id. at 12.  See also United States v. Zimmerman, 514 F.3d 851, 855 (9th Cir. 2007) (treating probationer's Fourth Amendment challenge to DNA Act as foreclosed by prior precedent addressing challenge by supervised releasee); Banks, 490 F.3d at 1186-87 (making no distinction between privacy interests of supervised releasees and probationers in a case involving both).  We explicitly found the differences between probation and supervised release to be immaterial in Weikert. 504 F.3d at 12.  Stewart and Soto offer no compelling rationale for altering that conclusion here.  The district court's analysis in Stewart cannot survive the balance we struck in Weikert.

**II.**

Our opinion in Weikert was narrowly drawn.  See id. at 14-16.  We noted that "demonstrated misuse of the DNA samples, a change in the government's collection procedures to include non-junk DNA, or the discovery of new uses for 'junk DNA,' would require a reevaluation of the reasonableness balance."[5]  Id. at 14.

---

[5] Stewart and Soto argue briefly that "a recent statement by the FBI shows its intent to 're-architect the CODIS software for use in the identification of missing persons.'"  They aver that these plans to enhance the effectiveness of the CODIS database must be considered "in the analysis as a factor which strengthens [the appellees'] privacy interests in [their] DNA profiles."  We decline to consider this "recent statement" because it was not contained in the record below, and, thus, it is not properly before us.  See United States v. Chaklader, 987 F.2d 75, 75 n.1 (1st Cir. 1993).

We also reserved judgment "on the constitutionality of the retention and searching by the government of the DNA profiles of individuals who have completed their terms of conditional release." <u>Id.</u> at 15. However, Stewart and Soto, as conditional releasees, fall squarely within the analysis in <u>Weikert</u>. As such, <u>Weikert</u> governs the disposition of the present appeal and mandates reversal of the district court's orders in these two cases.

<u>So ordered.</u>

---

However, such evidence might be important in a future case involving a challenge to the balance struck in <u>Weikert</u> on some of the grounds noted in <u>Weikert</u> itself.